78 F.3d 595
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gilbert TORRES, Plaintiff-Appellant,
v.
Shirley S. CHATER,* Commissioner of Social
Security, Defendant-Appellee.
 No. 94-55423.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 13, 1995.
Decided Feb. 29, 1996.
 
 Before: FLETCHER, CANBY and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gilbert Torres appeals the district court's order upholding the final decision of the Secretary of Health and Human Services that he is not disabled within the meaning of the Social Security Act, as amended. We reverse and remand.
 
 I. ANALYSIS
 A. Standard of Review
 
 3
 We review de novo a district court's order upholding the Secretary's denial of benefits. Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir.1995). The scope of appellate review is limited, however. The decision of the Secretary must be affirmed if she applied the correct legal standard and her decision is supported by substantial evidence. Id. "Substantial evidence" is relevant evidence a reasonable person might accept as adequate to support a conclusion. Id. Reviewing courts must consider the record as a whole, not just the evidence supporting the ALJ's findings. Id.
 
 B. Statutory Framework
 
 4
 To be considered "disabled," a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is determined to be under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but, cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).
 
 
 5
 We employ a five-part test for determining whether a claimant is disabled. First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir.1991). If so, the claimant loses. Id. If not, the ALJ must determine whether the claimant suffers a severe impairment. Id. If the impairment is not severe, the claimant is not disabled. Id. If the impairment is severe, it is compared to the impairments listed in Appendix 1 to Subpart P of § 404 of the Code of Federal Regulations ("Appendix 1"). Id. If the impairment is listed or equals a listed impairment, the claimant is considered disabled and the inquiry ends. Id.; see also 20 CFR § 404.1520(d) (if a claimant's impairment meets or exceeds the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant will be found to be disabled without considering the claimant's age, education, and work experience). If the impairment is not listed, the ALJ must determine whether the impairment prevents the claimant from performing his or her previous job. Baxter, 923 F.2d at 1395. If the claimant can still perform his or her previous job, the claimant is not disabled. Id. If the claimant cannot perform his or her previous job, the ALJ must determine whether the claimant is able to perform other work in the national economy. Id. Once the claimant has proved a physical or mental impairment precluding the claimant from performing his or her previous work, the burden shifts to the Secretary to show that the claimant has the capacity to perform a specific job existing in the national economy. Bonilla v. Secretary of Health, Educ. & Welfare, 671 F.2d 1245, 1246 (9th Cir.1982).
 
 
 6
 C. Did the ALJ err in finding that Torres' impairments do not meet or equal a listed impairment?
 
 
 7
 Listed Impairment 11.02 (Epilepsy--Major Motor Seizures) requires a finding of "major motor seizures (grand mal or psychomotor), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment." The claimant must also experience either daytime episodes or "[n]octurnal episodes manifesting residuals which interfere significantly with activities during the day."
 
 
 8
 Although Torres testified at the administrative hearing that he was experiencing seizures more than once a month, the ALJ found Torres' testimony not to be credible to the extent testified to. If an ALJ rejects the testifying claimant's testimony as not credible, the ALJ's credibility finding "must be supported by a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990). Here, the ALJ found that Torres' failure to take his medication as prescribed damaged his credibility. We have explained that a claimant's failure to follow prescribed course of treatment without adequate explanation can cast doubt on the sincerity of the claimant's testimony. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). Furthermore, the ALJ's finding that Torres did not consistently take his medicine is supported by substantial evidence in the record. The following is an excerpt from the administrative hearing after Torres described his seizures:
 
 
 9
 ALJ: That's because you're not taking your medication. Is that correct?
 
 
 10
 TORRES: No, sir.
 
 
 11
 ALJ: If you take your medication do you have seizures?
 
 
 12
 TORRES: Sometimes, yes.
 
 
 13
 ALJ: Well, when you say sometimes, how many times out of a, you know, a whole year that you have taken your medication have you had seizures? The reality is that you haven't had a seizure unless you haven't taken your medication isn't that correct?
 
 
 14
 TORRES: Not always, sir. No, not always.
 
 
 15
 ALJ: Well, what is not always?
 
 
 16
 TORRES: Well--
 
 
 17
 ALJ: Approximately.
 
 
 18
 TORRES: --I take my medication and I still have seizures--
 
 
 19
 ALJ: When was the last time you had a seizure?
 
 
 20
 TORRES: In about a week and a half--
 
 
 21
 ALJ: And the reason?
 
 
 22
 TORRES: --two weeks. The reason?
 
 
 23
 ALJ. Uh-huh. Have you been on your medication?
 
 
 24
 TORRES: I have taken some, yes.
 
 
 25
 ALJ: Have you been on your medication as you are suppose to take it?
 
 
 26
 TORRES: No, not regularly.
 
 
 27
 ALJ: That, that is the reality of it. Isn't that correct? That you have not been taking your medication as you were supposed to take it?
 
 
 28
 TORRES: No sir.
 
 
 29
 On the basis of the above testimony, reasonable minds could find that Torres was not taking his medication as prescribed. Thus, even if Torres' testimony regarding his compliance with his prescribed treatment is in conflict, the Secretary's finding that he does not consistently take his medication is conclusive. Torske v. Richardson, 484 F.2d 59, 60 (9th Cir.1973), cert. denied, 417 U.S. 933 (1974).
 
 
 30
 For this reason, we conclude that the ALJ was justified in finding that Torres' allegations of frequent seizures were not credible in the sense that Torres exaggerated the number of seizures. This does not end the analysis, however. It is undisputed that Torres had a history of seizures. The ALJ did not make a specific finding as to the frequency of Torres' seizures; he did not explicitly resolve whether Torres' seizures occur more frequently than once a month pursuant to Listed Impairment 11.02.
 
 
 31
 We also agree with Torres that the ALJ's finding that his seizures could be controlled with medication is not supported by substantial evidence. By this finding, the ALJ apparently meant both that Torres' seizures could be controlled through a more aggressive course of treatment than he was currently prescribed and that his seizures could be controlled if he regularly took his current medication. As to the first, Torres' treating physician at the V.A. prescribed 400 mg. of Dilantin for his seizures. The ALJ relied on consultative neurologist Dr. Maze's testimony regarding more aggressive use of medication. However, Dr. Maze merely stated that more aggressive use of medication could possibly (not probably) improve (not cure) Torres' seizure condition. Moreover, the ALJ set forth no reason for following the recommendation of this nontreating physician as to Torres' appropriate medication rather than Torres' treating physicians at the V.A. Thus, there is not substantial evidence to support a finding that Torres' seizures would be controlled through more aggressive treatment.
 
 
 32
 As to the second, there is substantial evidence to support the ALJ's finding that Torres does not take his current medication regularly. However, there is no evidence to support a finding that Torres' seizures would not occur if he took his medicine regularly. To the extent the ALJ meant that Torres' seizures would be less frequent if he took his medicine regularly, the record must be further developed to evaluate this issue.
 
 
 33
 Accordingly, we remand for the ALJ to determine whether Torres' impairments meet or equal Listed Impairment 11.02. Specifically, the ALJ should determine the frequency of Torres' seizures and the extent (if any) to which the seizures would be controlled if Torres regularly took his medication.
 
 
 34
 Torres also contends that Dr. King's finding that he possessed "antisocial personality traits" shows that he meets the requirements of Subsection A(3) of Listed Impairment 12.08 (Personality Disorders). We disagree. Subsection A(3) requires a finding of "[o]ddities of thought, perception, speech and behavior." According to Dr. King's report:
 
 
 35
 The patient's thought processes were goal directed. There was no evidence of formal thought disorder. There were no delusions or hallucinations.
 
 
 36
 Consequently, Dr. King found no oddities of thought or perception. Furthermore, there is nothing in Dr. King's report or anywhere else in the record that would indicate that "antisocial personality traits" are equivalent to "oddities of thought, perception, speech and behavior." Consequently, the ALJ's finding that Torres is not disabled pursuant to Listed Impairment 12.08 is supported by substantial evidence.
 
 
 37
 We cannot, however, say that the ALJ's finding that Torres' impairments do not meet or equal Listed Impairment 12.09 (Substance Addiction Disorders) is supported by substantial evidence because the ALJ did not provide any explanation for this finding. We note that in determining whether Listed Impairment 12.09 is equalled, "it is irrelevant whether [Torres'] symptoms resulted solely from his mental impairments or from a combination of his mental and physical impairments." Lester v. Chater, 69 F.3d 1453, 1462 (9th Cir.1995); see also Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir.1990); 20 C.F.R. § 404.1526(a). Thus, the ALJ should consider the combined effects of Torres' impairments in determining whether the listing is equalled. Because the ALJ is in a better position to evaluate the evidence, remand is appropriate. See Marcia, 900 F.2d at 176.
 
 
 38
 D. The ALJ's finding that Torres could perform other work in the national economy is not supported by substantial evidence.
 
 
 39
 Torres next contends that, even if he does not have a listed impairment, the ALJ improperly refused to consider the vocational expert's testimony that, assuming he has seizures several times a month and must stay in bed three or four days after each seizure, he would have difficulty getting and keeping a job because all jobs require attendance. "The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir.1989). The ALJ is "free to accept or reject these restrictions ... as long as they are supported by substantial evidence." Id. (quoting Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir.1986)). Because the ALJ was justified in rejecting the conclusion that Torres was experiencing several seizures a month, the ALJ's rejection of the vocational expert's response to Torres' attorney's hypothetical was proper.
 
 
 40
 Nonetheless, the ALJ's finding that Torres retained the residual functional capacity for medium work is erroneous because it is based upon a hypothetical that assumed Torres would not experience any seizures because his epilepsy can be controlled through medication. "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant...." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988). As previously discussed, the ALJ's finding that Torres' seizures can be controlled by medication is not supported by substantial evidence.
 
 
 41
 E. Should Torres' prior application be reopened?
 
 
 42
 Finally, Torres contends that the Secretary erred in refusing to reopen his April 19, 1990 application, which was denied August 14, 1990. Torres filed a request for reconsideration on September 14, 1990. That request was denied. Torres subsequently requested the ALJ in this case to reopen his earlier application.
 
 
 43
 The Supreme Court held in Califano v. Sanders, 430 U.S. 99 (1977), that the Social Security Act exempts from judicial review the Secretary's decision not to reopen a prior determination. However, the Supreme Court distinguished a routine decision not to reopen a prior determination from a case in which a claimant raises a colorable constitutional challenge to the Secretary's decision. See Id. at 109. In Panages v. Bowen, 871 F.2d 91, 93 (9th Cir.1989), we explained that the constitutional challenge "must relate to the manner or means by which the Secretary decided not to reopen the prior decision, rather than to the merits of the prior decision or the means by which that decision was reached."
 
 
 44
 Torres has failed to present a colorable constitutional challenge to the manner or means by which the ALJ in this case decided not to reopen the prior decision. The ALJ denied Torres' request to reopen the previous application on the ground that he had failed to show good cause for reopening the prior application because he failed to present new or material evidence. Torres contends this decision violates his right to due process because the ALJ "did not follow the legal standards set by this Court." Torres fails to explain upon which "legal standards" he relies; however, we note that 20 C.F.R. §§ 404.989 and 416.1489 provide that there is good cause to reopen a determination or decision where (1) there is new or material evidence; (2) there was a clerical error in the computation of benefits; or (3) the evidence that was considered in making the determination or decision clearly shows that on its face a decision was made.
 
 
 45
 Torres' claim that his due process rights were violated because the evidence considered with respect to the determination of the first application clearly shows that an error was made is a challenge "to the merits of the prior decision or the means by which that decision was reached." Panages, 871 F.2d at 93. Consequently, it does not provide a basis for us to review the Secretary's decision not to reopen Torres' prior application.
 
 II. CONCLUSION
 
 46
 We remand to the ALJ for a determination of (1) whether Torres' impairments meet or equal the listing for substance addiction disorder or epilepsy, and, if not, (2) whether Torres would be able to perform substantial gainful activity in the national economy given the frequency of his seizures and his other limitations.
 
 
 47
 REVERSED and REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 Pursuant to P.L. No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with § 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant. Because the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to the defendant as "the Secretary" throughout this memorandum for the sake of convenience
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3