97 F.3d 1459
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frances Gale LOWMAN, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration, Defendant-Appellee.
 No. 95-35105.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1996.
Decided Sept. 5, 1996.
 
 1
 Before: FERGUSON and BRUNETTI, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Frances Gale Lowman ("Lowman"), appeals from the district court's affirmation of the Secretary of the Department of Health and Human Services' ("Secretary")[1], denial of Lowman's application for Supplemental Security Income disability payments ("SSI") under 42 U.S.C. § 1391. The district court held that the Secretary's decision was supported by substantial evidence on the whole record, and therefore, affirmed the Secretary's decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and agree with the district court's determination that the denial of benefits was supported by substantial evidence. We, therefore, affirm.
 
 
 4
 Lowman applied for SSI on March 19, 1991, which application was denied on August 19, 1991. Upon reconsideration, the denial was affirmed. Lowman then requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on August 24, 1992, following which, the ALJ found that Lowman was not disabled and denied benefits. Lowman then sought Appeals Council review of the ALJ's decision. The Appeals Council vacated the decision, finding that the ALJ had not adequately evaluated the opinion of Dr. Quin Cochran ("Dr. Cochran"), an examining psychiatrist, and remanded the case to the ALJ for another hearing and further consideration of Dr. Cochran's opinion.
 
 
 5
 The second hearing was held on July 19, 1993, and the ALJ again found that Lowman was not disabled and therefore denied benefits. The Appeals Council declined to review the denial, and it therefore became the final decision of the Secretary on April 21, 1994.[2] Lowman filed a complaint in federal district court on April 28, 1994. On December 13, 1994, Judge Jones entered his Opinion and Order, and Judgment affirming the Secretary's final decision. Lowman filed this appeal on May 16, 1995.
 
 
 6
 Lowman was 38 years old when she initially applied for SSI benefits. She did not complete high school but obtained a GED. In the past, she has worked as a bartender, roofer and restaurant manager, but has not held a job since 1987. Lowman claims disability dating from December 1, 1987 based on several impairments, including bilateral tennis elbow, bilateral carpal tunnel syndrome, degenerative arthritis of her right shoulder, degeneration of both knees, dysthymia, somatoform pain disorder, personality disorder, and alcohol abuse. However, in her original application for benefits she claimed physical ailments only, including pain in her joints, knees and back. Lowman claims that her physical impairments date to a knee injury sustained in 1986.
 
 
 7
 Following her 1986 knee injury, Lowman underwent two knee surgeries,[3] one in 1986 and one in 1988. In 1990, she returned to her knee surgeon complaining of debilitating knee pain. In the interim, Lowman made several visits to Josephine Memorial Hospital, where she was brought by police after incidents relating to alcohol consumption. Following these incidents, Lowman was referred to Josephine Mental Health Care Clinic, where a psychiatrist diagnosed possible bi-polar disease and prescribed lithium and alcohol abstinence. However, the lithium treatment was discontinued when Lowman became ill, and subsequently failed to show up for follow-up appointments.
 
 
 8
 In 1991, Lowman was referred to Daniel Skotte, D.O. ("Dr. Skotte"), by the Department of Vocational Rehabilitation for an orthopedic examination of her knees. Dr. Skotte found that Lowman had normal flexion and extension in her knee and noted that the pain she complained of did not affect her ability to ambulate. However, the following month on July 9, Lowman appeared for a mental status examination in a wheelchair and told Dr. Cochran, the examining psychiatrist, that she had been in a wheelchair for over a year.
 
 
 9
 Following the mental examination conducted at the request of the Disability Determination Service, Dr. Cochran judged Lowman's neurological integration to be normal and her intellectual functioning to be average or below. He diagnosed depressive neurosis and a somatoform pain disorder, but found no evidence of a thought disorder. Dr. Prasana Pati ("Dr. Pati"), a consulting psychiatrist to the Disability Determination Service, evaluated Dr. Cochran's report and other evidence on August 5, 1991. Dr. Pati found that Lowman had moderate limitations in her ability to carry out detailed instructions or to maintain attention and concentration for extended periods, and moderate limitations in her ability to interact appropriately with the general public. However, Dr. Pati concluded that Lowman had no limitations on her ability to complete a normal work day or week, to set realistic goals, or to make plans independently of others.
 
 
 10
 Approximately one year after his initial report, Dr. Cochran completed a mental residual functional capacity assessment ("MFRC"), based on his July 9, 1991 examination of Lowman, at the request of her counsel. He assessed Lowman as markedly limited[4] in three areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) the ability to travel in unfamiliar places or use public transportation.
 
 
 11
 Furthermore, Dr. Cochran's report stated that Lowman did not have a substantial loss[5] in any of three work-related activities: (1) to understand, carry out, and remember simple instructions; (2) to respond appropriately to supervision, co-worker, and usual work situations; and (3) to deal with changes in a routine work setting.
 
 
 12
 At the first hearing before the ALJ, Dr. Isabell Moser ("Dr. Moser"), a psychologist called as an expert by the office of Hearings and Appeals, testified that claimant had sufficient attention and concentration to read a chapter in a novel, that she was independent in her daily living, and was able to maintain some level of social functioning. However, Dr. Moser stated that, although Lowman was cognitively intact, she suffered from dysthymia, somatoform personality, and substance abuse disorders resulting in moderate limitations in her daily activities.
 
 
 13
 In addition, Dr. Moser testified that Lowman had moderate limitations in her social functioning and limited concentration for complex and detailed material. Dr. Moser also testified to Lowman's residual functional capacity, stating that she had marked limitations in her ability to understand, remember and carry out detailed instructions, ability to interact appropriately with the general public and to set realistic goals. Dr. Moser attributed the latter two limitations to Lowman's poor motivation rather than to an underlying psychological disorder. Furthermore, Dr. Moser agreed with Dr. Pati's assessment that Lowman was capable of simple work, with limited contact with the general public.
 
 
 14
 The ALJ's initial decision characterized Dr. Cochran's report as "the most thorough assessment of [Lowman's] present mental status." Furthermore, the ALJ found that Dr. Cochran's report indicated that he believed Lowman had limitations but that these would not prevent her from performing the basic mental activities associated with work. The ALJ also found Dr. Cochran's assessment consistent with Dr. Pati's but not Dr. Moser's.
 
 
 15
 In vacating the ALJ's first decision, the Appeal's Council found that Dr. Moser's assessment was not in conflict with Dr. Cochran's. In his second decision, the ALJ reevaluated Dr. Cochran's assessment and found that it was not the most reliable description of Lowman's actual ability to perform work, and instead, found that Dr. Moser's description was more reliable in most respects. However, as to Lowman's ability to maintain concentration over a long period of time, the ALJ found that Dr. Pati's assessment was more reliable, basing this conclusion on Lowman's testimony that she never missed "Wheel of Fortune" and could read a novel a chapter at a time, and on Lowman's level of attention at each hearing, including one prior to which she admitted drinking 80 ounces of beer. The ALJ then concluded that Lowman's ability to concentrate was moderately limited rather than markedly limited, noting that Dr. Pati and Dr. Moser agreed that Lowman was capable of simple uncomplicated work, not involving contact with the public.
 
 
 16
 In affirming the ALJ's decision, the district judge found that the Secretary had properly rejected Dr. Cochran's assessment having carefully set out a detailed and thorough summary of the facts and conflicting clinical evidence, and having summarized his reason's for not according the assessment greater weight. The district judge also rejected Lowman's argument that it was bound by the ALJ's first decision, stating that the decision had been vacated with instructions to reconsider Dr. Cochran's assessment, and finding the ALJ's reasons for rejecting Dr. Cochran's assessment to be supported by substantial evidence in the record. Finally the district judge rejected Lowman's argument that the ALJ improperly substituted his own opinion for that of the medical experts, finding that the ALJ carried out his charge to interpret the facts and medical evidence and make findings. Thus, the court found the ALJ's findings concerning Lowman's mental status to be supported by substantial evidence in the record.
 
 
 17
 A district court's order upholding the Secretary's denial of benefits is reviewed de novo. Andrews v. Shalala, 53 F.3d 1035, 1039 n. 1 (9th Cir.1995); Travers v. Shalala, 20 F.3d 993, 995-96 (9th Cir.1994); Mathews v. Shalala, 10 F.3d 678, 679 (9th Cir.1993). The scope of appellate review, however, is limited and the Secretary's decision must be affirmed if it is supported by substantial evidence and the Secretary applied the correct legal standards. Flatten v. Secretary, 44 F.3d 1453, 1457 (9th Cir.1995); Mathews, 10 F.3d at 679. Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion considering the entire record. Flatten, 44 F.3d at 1457; Travers, 20 F.3d at 996; Mathews, 10 F.3d at 679. The court may not substitute its judgment for that of the Secretary if the evidence can reasonably support either affirming or reversing the Secretary's conclusion. Flatten, 44 F.3d at 1457. "The ALJ is responsible for determining credibility, resolving conflicting medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039.
 
 
 18
 In his second decision, the ALJ related the reasons for his finding that Dr. Cochran's conclusions regarding [Lowman's] mental residual functional capacity, were not the most reliable description of her mental ability to perform work. The ALJ noted that Dr. Cochran saw the claimant only once, administered no testing, and made his residual functional capacity assessment nearly a year after he saw her. Furthermore, the ALJ found that Lowman was not credible, and therefore gave little weight to the portion of Dr. Cochran's evaluation which was based on Lowman's self-reported history.
 
 
 19
 Furthermore, the ALJ related that Dr. Moser, having heard Lowman's testimony at the hearing, found that Lowman had sufficient attention and concentration to read a chapter of a novel, that she was independent in her activities of daily living, and was able to maintain some level of social functioning evidenced by her ability to maintain friendships. In addition, the ALJ highlighted Dr. Moser's testimony that Lowman appeared able to function while drinking and had never lost a job due to drinking. The ALJ stated that Dr. Moser agreed with Dr. Pati's assessment that Lowman had moderate limitations in her social functioning and often had difficulties in her concentration, persistence and pace but had never deteriorated at work or in a work like setting.
 
 
 20
 Finally the ALJ stated that Dr. Moser disagreed with Dr. Pati only to the extent that she believed Lowman to have marked, rather than no significant, limitations in her ability to understand, remember and carry out detailed instructions; marked, rather than moderate, limitations in her ability to interact appropriately with the general public; and marked, rather than no evidence of limitations in her ability to set realistic goals. The ALJ noted that Dr. Moser had attributed Lowman's limitations in the latter two areas to poor motivation rather than a psychological disorder.
 
 
 21
 In giving greater weight to Dr. Pati's conclusions that Lowman had only "moderate" rather "marked" limitations on her ability to concentrate and attend to the task at hand, the ALJ referred to Lowman's testimony that she never misses Wheel of Fortune, could read a novel a chapter at a time and maintained an acceptable level of attention at the hearing despite her claim that she had drunk 80 ounces of beer before the hearing.
 
 
 22
 Thus, contrary to Lowman's contentions that the ALJ improperly relied on a "cut and paste" version of Dr. Moser's assessment, the ALJ gave specific reason's for rejecting Dr. Cochran's contentions. In Andrews, similar reasons for rejecting a non-treating, examining physician's assessment in favor of a non-examining medical expert's assessment, which was based on review of the claimant's medical records, were found to be legitimate. 53 F.3d 1043. Thus, this court held that the ALJ's conclusions were based on substantial evidence where the ALJ relied on "[claimant's] testimony, weaknesses in the examining psychologist's diagnosis and conclusions ... the opinions and analysis of the non-examining psychologist who testified as a medical expert, and the written reports of other medical advisors." 53 F.3d 1043.
 
 
 23
 Considering the record as a whole, the Secretary's decision is supported by substantial evidence, therefore, the decision of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Pursuant to the Social Security Independence and Program Improvement Act of 1994, P.L. 103-296 § 106(d), and subsequent to the filing of the notice of appeal in this case, Shirley S. Chater, Commissioner of the Social Security Administration was substituted for Donna E. Shalala, Secretary of Health and Human Services as the defendant in this action. However, here, for clarity, the defendant in this action will be referred to as Secretary
 
 
 [2]
 20 C.F.R. § 416.1481 provides that, "[t]he Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."
 
 
 [3]
 The record indicates that Lowman had a previous injury to her left knee, and had undergone surgery prior to 1986
 
 
 [4]
 Marked limitation as defined by Dr. Cochran's MFRC form is one which "seriously interferes with the individual's ability to function independently, appropriately, and effectively in the designated area."
 
 
 [5]
 Substantial loss as defined in Dr. Cochran's report is an inability to perform the particular activity in regular, competitive employment