92 F.3d 1191
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arlene ALSOBROOKS, Plaintiff-Appellant,
v.
Shirley S. CHATER,* Secretary of Health and
Human Services, Defendant-Appellee.
 No. 95-15283.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 12, 1996.
Decided July 31, 1996.
 
 Before: SNEED, NORRIS, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Arlene R. Alsobrooks appeals the district court's grant of summary judgment affirming the denial of her application for supplemental security income ("SSI") and disability insurance benefits by the Commissioner of the Social Security Administration ("the Commissioner"). She contends that the Commissioner's finding of no disability is not supported by substantial evidence because the Commissioner failed to fully develop the record to include three years of medical evidence; improperly rejected Alsobrooks' complaints of disabling pain; and improperly discounted the opinion of Alsobrooks' treating physician. For the reasons set forth below, we affirm.
 
 I.
 BACKGROUND
 
 3
 Alsobrooks is a 52-year old woman with a GED and training as a Certified Nursing Assistant. She injured her back on June 12, 1987, in the course of her work as a nurse's homemaker. On the recommendation of her physician, Dr. Bingham, she stayed off work for two months. She returned to work three separate times before the end of the year, once for a month and twice for a week; each time she quit because of her back pain. She has not worked since then. Alsobrooks has also suffered from asthma since 1988 or 1989, and was diagnosed as diabetic in 1986. Her insured status expired on March 31, 1989.
 
 
 4
 Alsobrooks filed an application for disability insurance benefits and SSI on April 15, 1992, with a protective filing date for SSI purposes of March 23, 1992.[1] She claimed disability since January 1988 based on a ruptured disc and asthma. After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ").
 
 
 5
 At the hearing, held on August 24, 1993, Alsobrooks testified that her lower back pain is continuous at a level of "8" on a scale of 1-10, and is sometimes more severe. With certain movements, sharp pains radiate downward to her right toes. She takes several pain medications, one of which makes her drowsy. She testified that she can stand in place for less than 10-15 minutes at a time, and she uses a crutch to walk, though no doctor prescribed this. She can walk two or three blocks with the crutch, and a single block without it. She can sit upright for only five minutes at a time, and cannot lift over five pounds. She can drive only short distances, and relies on her daughter to help with her shopping and to do her housework.
 
 
 6
 Alsobrooks also testified about her daily activities, which involve reading and listening to tapes and the radio, and visiting with her neighbors and friends. She spends over half the day lying down, and sleeps only three or four hours during the night because of her pain. She testified that she felt she could not work because "I don't feel that I could stand or sit with my back and my breathing has just gotten even worse than what it was when I was first diagnosed with asthma. I can't walk that far without using an inhaler." When questioned by the ALJ about her weight, which is about 216 pounds to her height of 5'5", she testified that no doctor has ever recommended that she lose weight. She had last seen a doctor in April or May, for her asthma problem.
 
 
 7
 The ALJ issued an eight-page opinion which found that Alsobrooks has several severe medically determinable impairments: "a chronic low back syndrome, a herniated nucleus pulposus at L5-S1, status post history of neck pain with a diagnosis of herniated cervical discs at C4-5 and C5-6, currently asymptomatic, asthma, a history of diabetes mellitus, and obesity." After considering her testimony and the medical reports in the record, the ALJ found that she could not return to her previous work--nurse's homemaker, certified nursing assistant, maid, teacher's aide, convenience store clerk--but that she could perform "the full range of light work." He therefore denied her application. The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. Alsobrooks then requested judicial review.
 
 
 8
 The district court granted summary judgment in favor of the Commissioner and Alsobrooks timely appealed. The district court is authorized to review the Commissioner's decisions by 42 U.S.C. §§ 405(g), 1383(c)(3). Our jurisdiction is pursuant to 28 U.S.C. § 1291.
 
 II.
 DISCUSSION
 A. Legal Standards
 
 9
 We review de novo the district court's grant of summary judgment in favor of the Commissioner. Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir.1991). Nonetheless, the scope of our review is limited. We must affirm the judgment if the Commissioner's determination is supported by substantial evidence and the denial of benefits is free of legal error. Id. Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted), but "less than a preponderance," Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir.1990) (internal quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation omitted); Baxter, 923 F.2d at 1394. In this review, we must consider the record as a whole, weighing both the evidence that supports and that which undermines the Commissioner's decision. Gonzalez, 914 F.2d at 1200. "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir.1985).
 
 
 10
 To obtain benefits under Title II or Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433 (disability insurance), 1381-1383d (SSI), a claimant must demonstrate that she is unable
 
 
 11
 to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
 
 
 12
 42 U.S.C. § 423(d)(1)(A); Flaten v. Secretary of Health & Human Serv., 44 F.3d 1453, 1459 (9th Cir.1995). The claimant initially has the burden of demonstrating that she has a disability which prevents her from performing her previous job(s). Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir.1993). The burden then shifts to the Commissioner to show that the claimant is capable of doing other work in the national economy. Id. at 681. The ALJ determined that both Alsobrooks and the Commissioner had met their respective burdens, and therefore denied benefits. Alsobrooks asserts this decision is not supported by substantial evidence.
 
 B. The Medical Evidence From 1987-1989
 
 13
 Alsobrooks contends first that the ALJ failed to develop the record fully; in particular, he failed to consider three years of medical reports from 1987 to 1989. Those reports were summarized in a comprehensive evaluation prepared by Dr. Louis Dean in May 1990, but the reports themselves were neither entered into the record nor discussed by the ALJ. We disagree that this was an error, because the reports were not significantly probative of Alsobrooks' residual functional capacity during the relevant time period.[2]
 
 
 14
 1. The Duty to Develop the Record.
 
 
 15
 Both the disability benefits claimant and the ALJ bear responsibility for developing the evidentiary record. The claimant "must produce medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." 20 C.F.R. § 404.1512(c). The ALJ must, before deciding that a claimant is not disabled,
 
 
 16
 develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary.... We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.
 
 
 17
 Id. § 404.1512(d); see Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983) (same).
 
 
 18
 Here, the medical evidence was fully developed for the year preceding Alsobrooks' application, that is, the year between March 1991 and March 1992. That evidence consisted of treatment records concerning Alsobrooks' troubles with asthma and diabetes, and one complaint of knee pain. The ALJ also examined Dr. Dean's May 2, 1990, report prepared in support of Alsobrooks' workers compensation claim, and a September 8, 1992, report by Dr. L.M. Queniahan prepared to evaluate her disability claim. To fulfill his duty to fairly develop the record, the ALJ was required to do no more because, for the reasons discussed below, there was no "reason to believe that development of an earlier period [was] necessary."
 
 
 19
 2. The Relevant Time Period.
 
 
 20
 In order to collect disability insurance benefits, Alsobrooks was obliged to show that she became disabled on or before the expiration of her insured status. 42 U.S.C. § 423(a)(1)(A)-(D); Flaten, 44 F.3d at 1458. Because her application was filed after she was no longer insured, she needed to prove that her disability existed continuously since the expiration date to at least within twelve months of the date she applied for disability benefits. Flaten, 44 F.3d at 1458; Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir.1989).
 
 
 21
 Alsobrooks' insured status lapsed on March 31, 1989. She filed her application for benefits on April 15, 1992, with a protective filing date of March 1992. Therefore, she needed to show that her disability began before March 31, 1989, and lasted at least until March 1991.
 
 
 22
 The ALJ found that Alsobrooks met her burden of demonstrating that she suffered from a number of severe impairments and was unable to return to her previous work. The burden of proof had therefore shifted to the Commissioner to demonstrate that she remained able to participate in some sort of substantial gainful activity. Dr. Dean's report, prepared precisely in the middle of the relevant time period, in May 1990, provided substantial evidence for the ALJ's conclusion that at that time Alsobrooks' residual functional capacity was such that she was not incapacitated from working.[3]
 
 
 23
 An ALJ's opinion should be as "comprehensive and analytical as feasible," Gonzalez, 914 F.2d at 1200, though it need not discuss all the evidence presented, Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.1984). The ALJ must, however, explain why significant probative evidence has been rejected. Id. at 1395. Here, the 1987-89 reports were not significant probative evidence for the simple reason that even if they could establish that Alsobrooks was unable to work during that period, they could not overcome the effect of Dr. Dean's report, which was to show that she had become able to work at least by May 1990. Because Dr. Dean's report prevents her from establishing the required continuity, Flaten, 44 F.3d at 1458, the ALJ was not required to explain why he declined to consider the earlier reports.
 
 
 24
 In Arnone, 882 F.2d at 39, the Second Circuit found that a claimant failed to meet his burden of proving disability from before the expiration of his insured status where he failed to submit medical evidence concerning the "crucial period" between his lapse of insured status and twelve months before he filed his application. The court observed that had the evidence from earlier years "demonstrate[d] that his condition would not improve," then he could have established a prima facie case even without evidence from this crucial period. Id. at 39-40.
 
 
 25
 Similarly, the 1987-89 reports at issue here do not demonstrate that Alsobrooks' condition would not improve. Not only are the reports themselves ambiguous in this regard,[4] but the later reports show that she did in fact improve. Therefore, the ALJ did not err in not discussing the earlier reports.
 
 C. Pain Testimony
 
 26
 Alsobrooks argues next that the ALJ erred in rejecting her subjective testimony of severe pain without setting forth specific findings to support such rejection. An ALJ may not discredit a claimant's pain testimony merely because it is unsupported by objective medical findings, Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc); the ALJ must justify the decision to reject such testimony with specific findings that are supported by substantial evidence in the record. Id. at 345-46; Fair v. Bowen, 885 F.2d 597, 602 (9th Cir.1989). However, an "inadequately explained[ ] failure to seek treatment or follow a prescribed course of treatment" is sufficient evidence to support such a decision. Fair, 885 F.2d at 603; see also Flaten, 44 F.3d at 1464.
 
 
 27
 Here, the ALJ did support his decision not to credit fully Alsobrooks' pain testimony. He found that "[d]espite the claimant's history of longstanding back symptoms, the record is notable for the lack of aggressive medical management for that problem." That finding is supported by substantial evidence. Alsobrooks consulted with doctors frequently in 1987 and 1988, again in March and September of 1989, and then sought no further treatment for her back problems until she saw Dr. Dean in connection with her workers compensation claim in May 1990. After that, she sought multiple treatments for asthma, but there are no records of further back consultations until she saw Dr. Queniahan in connection with her disability application in October 1992.
 
 
 28
 It is true that the ALJ also considered the fact that Dr. Dean's report described a much lower level of symptoms than Alsobrooks alleged, and that no physician prescribed the use of a crutch. However, he did not impermissibly rely solely on those findings. Cf. Bunnell, 947 F.2d at 345. Therefore, he did not err in not fully crediting her pain testimony.
 
 D. The Treating Physician's Opinion
 
 29
 Finally, Alsobrooks contends that the ALJ erred in discrediting the opinion of her treating physician, Dr. Bingham, without discussion. An ALJ may disregard the controverted conclusions of a treating physician only if he justifies this decision with " 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.' " Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir.1994) (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985)); see also Matthews, 10 F.3d at 680-81 (no rejection of treating physician's opinion where that physician never said claimant was disabled); Sanchez v. Secretary of Health & Human Serv., 812 F.2d 509, 511 (9th Cir.1987) (declining to remand where claimant failed to show that evidence was "material to and probative of his condition as it existed at the relevant time--at or before the disability hearing").
 
 
 30
 Dr. Bingham's reports, as summarized in Dr. Dean's report, indicate that on April 19, 1988, "[i]t was felt she was currently disabled from any type of work"; that on May 16, 1988, "[s]he remained Disabled from work"; that on September 12, 1988, "[i]t was felt she remained Totally Disabled from any active work or employment"; and that in December 1988 she had "further Temporary Disability." In those reports, Dr. Bingham never opined that she was permanently disabled. Moreover, Dr. Bingham's opinion that Alsobrooks was temporarily disabled was not given during the relevant time period, between March 1989, when her insured status expired, and March 1991, twelve months before she applied for benefits. See Arnone, 882 F.2d at 39-40; Sanchez, 812 F.2d at 511. Therefore, the ALJ did not err in failing to discuss his opinion.
 
 
 31
 There is, therefore, substantial evidence in this record to support the Commissioner's denial of benefits. Because we may not substitute our judgment for that of the Commissioner in such a case, we affirm the judgment of the district court.
 
 
 32
 AFFIRMED.
 
 NORRIS, Circuit Judge, dissenting:
 
 33
 Alsobrooks appeals the denial of her application for disability benefits, arguing that the ALJ erred by failing to obtain and discuss three years of medical evidence before rejecting Alsobrooks's application.
 
 
 34
 * Alsobrooks first argues that the ALJ erred by rejecting her application without discussing medical evidence from 1987 through 1989, which was summarized in the 1990 report of an examining physician.[1] She contends that this error requires remand because, while "the ALJ may have considered and rejected the evidence for sound reasons, the ALJ's failure to comment on the appellant's evidence leaves this court with a record insufficient for a meaningful appellate review." Burnett v. Bowen, 830 F.2d 731, 736 (7th Cir.1987). The majority holds that the ALJ committed no error because this evidence was not significantly probative, reasoning that the 1988 opinion of Alsobrooks's treating physician that she remained temporarily totally disabled "do[es] not demonstrate that Alsobrooks' condition would not improve." Memorandum Disposition at 12.
 
 
 35
 I disagree. The medical evidence showing that she was disabled from 1987 to 1989 does not say that her disability ended in 1989 or would end in the foreseeable future. As a result, it gives rise to a permissible inference that her disability persisted thereafter. To be sure, the ALJ, as the finder of fact, could reject such an inference in light of other evidence that her disability did end before 1991. That does not mean, however, that the medical evidence from 1987 to 1989 had no probative value on the issue whether she was still disabled in 1991. Only by considering the 1987-89 reports of Alsobrooks's treating physicians in conjunction with the 1990 and 1992 reports of examining physicians could the ALJ determine whether Alsobrooks suffered from a disability that began before 1989 and continued into 1991.[2] Because the ALJ must "explain why 'significant probative evidence has been rejected,' " Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981)), the ALJ's failure to explain why it rejected this evidence was error.
 
 
 36
 Accordingly, the ALJ erred by failing to comment on the 1987-89 medical evidence.
 
 II
 
 37
 Alsobrooks next argues that the ALJ violated his duty to develop the administrative record when he failed to obtain the 1987-89 medical reports. The majority rejects this argument on the ground that "the medical evidence was fully developed for the year preceding Alsobrooks' application...." Memorandum Disposition at 7.
 
 
 38
 This analysis is flawed because the majority's assertion that the "duty to develop" does not require the ALJ to obtain medical records on his own initiative is not supported by either the case law or the applicable regulations. When the ALJ finds that a claimant is not disabled, as in this case, Social Security Administration regulations place the responsibility on the Commissioner to develop a claimant's medical history. The regulations describe this responsibility, stating that
 
 
 39
 [b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary.... We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.
 
 
 40
 20 C.F.R. § 404.1512(d) (emphasis added). There is no authority for the proposition that the ALJ's "duty to develop the record," Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996), was limited in this case, as the majority suggests, to "no more" than an examination of the previous year's medical history. Memorandum Disposition at 7-8. On the contrary, the ALJ may need to obtain additional medical records when necessary to develop the record fully. In Thorne v. Califano, 607 F.2d 218, 219 (8th Cir.1979), for example, the court remanded in order for the ALJ to obtain an opinion from the claimant's treating physician. Id. at 220. Similarly, in Landess v. Weinberger, 490 F.2d 1187 (8th Cir.1974), the court determined that "the evidence gathered by the [ALJ] from [the claimant]'s physicians does not in any way develop the extent of her disability," and remanded "to have the views of her treating physicians more fully developed." Id. at 1189 (emphasis in original). In Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594 (1st Cir.1980), the court stressed that it may be necessary to develop the record, where it is within the power of the administrative law judge without undue effort, "by ordering easily obtained further or more complete reports...." Id. at 598. Cf. Crane v. Shalala, 76 F.3d at 255 (ALJ's failure to obtain records regarding onset date of disability did not violate duty to develop because onset date was not at issue); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996) (no failure to fulfill duty to develop where medical records at issue were either not probative of disability or were retrospective).
 
 
 41
 Because the examining physician's summary of the 1987-89 medical records should have put the ALJ on notice that they were significantly probative of Alsobrooks's claim, the ALJ had "reason to believe," 20 C.F.R. § 404.1512(d), that they were necessary to develop the administrative record. The majority misunderstands this point. Contrary to the majority's interpretation of the import of the physician's summary of the 1987-89 medical records--that their presence in the record "weakened" Alsobrooks's claims, Memorandum Disposition at 6 n. 2--the physician's summary of the 1987-89 medical records should have signaled an even greater need to develop the record than might have existed in another case. Here, crucial portions of the physician's summary were illegible, leaving any reader to wonder whether, for example, the words "...ludes heavy lifting," R. at 137, should have read "precludes" or "includes." Such ambiguity cannot indicate an adequately developed record where the question involves someone's claimed physical disability.
 
 
 42
 In sum, I would hold that the ALJ violated his duty to develop the administrative record by failing to obtain those reports. Accordingly, I would remand for reconsideration by the ALJ.
 
 
 
 *
 Pursuant to P.L. No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, Commissioner of the Social Security Administration, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant. Although the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to the defendant as "the Commissioner" throughout this disposition for the sake of convenience
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form. 20 C.F.R. § 404.610. However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date. Id. § 404.630
 
 
 [2]
 Alsobrooks' claim is also weakened by the fact that the reports at issue were the subject of a 5-page summary in Dr. Dean's report, and were therefore not entirely absent from the record
 
 
 [3]
 Dr. Queniahan's report, prepared nearly a year and a half later, supported the same conclusion
 
 
 [4]
 Immediately following Alsobrooks' injury in 1987, her physician, Dr. Bingham, reported that she was "Temporarily Totally Disabled." By her next visit, she had improved and was tentatively released to return to work, but the next report indicated her pain was worsening. In early 1988 she was examined three times by Dr. Sanford Henry, who reported that her back problems had "cleared up" after the injury, but had recurred, and that she would be "disabled from work for a month." After that she visited a neurosurgeon, Dr. McDonald, who reported that she was mobile and pain-free within six weeks of her injury, but was now experiencing worsening pain. In April and May of 1988, Dr. Bingham reported that she was "currently disabled from any type of work." In June, Dr. John Solak examined her and felt she would be disabled "for another month." In July, Dr. Lloyd Tom recommended vocational rehabilitation. In September, Dr. Bingham reported that she remained "Totally Disabled," and in December he reported "further Temporary Disability." A March 1989 report by Dr. V.W. Schweitz advised that she be "limited to semi-sedentary activity." The last report, in August 1989 by Dr. R.L. McAllister, was equivocal: he noted both that Alsobrooks felt she was worse than she had been a year ago, and that there was no evidence indicating surgery, but he did not state an opinion as to her level of disability
 
 
 [1]
 It is clear that the ALJ disregarded this evidence because he stated that "no physician has characterized the claimant as disabled or incapable of performing light-level work," Opinion of Dept. of Health and Human Servs., filed Nov. 19, 1993 at 5, when in fact the 1987-89 records include the opinions of several physicians characterizing her as disabled
 
 
 [2]
 The majority further reasons that the 1987-89 reports were irrelevant because Dr. Dean's 1990 summary of the reports found that Alsobrook "had become able to work at least by May 1990." Memorandum Disposition at 9. I do not find Dr. Dean's report so encouraging about Alsobrooks's employment prospects. Instead, I note that the report states that Alsobrook would, without surgery (which she has not yet had), "be considered PERMANENT AND STATIONARY" and would suffer particular "factors of Permanent Partial Impairment." R. at 136. Given this at best inconclusive nature of Dr. Dean's 1990 report, I cannot agree with the majority that "the ALJ was not required to explain why he declined to consider the earlier reports." Memorandum Disposition at 9